UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

TOMAS EDUARDO NEVAREZ JURADO,

        Petitioner,

      v.                                                          25-CV-943-LJV
                                                                    DECISION & ORDER

JOSEPH FREDEN et al.,

        Respondents.

───────────────────────────────


On October 27, 2022, the petitioner, Tomas Eduardo Nevarez Jurado, was told

by United States Citizenship and Immigration Services ("USCIS") that because he

"warrant[ed] a favorable exercise of discretion," he would "be issued an employment

authorization document and ha[d] been placed in deferred action" for four years.

Docket Item 1-2.  Less than three years later, without taking any action to revoke his

grant of deferred action, the government arrested Nevarez Jurado.  *See generally*

Docket Item 1 (alleging that Nevarez Jurado was detained by Immigration and Customs

Enforcement ("ICE") and taken into custody).  He currently is being held at the Buffalo

Federal Detention Center.  *See id*. at ¶ 7.

Nevarez Jurado commenced this action by filing a petition for a writ of habeas

corpus under 28 U.S.C. § 2241 on September 27, 2025.  Docket Item 1.  In that petition,

he challenged his detention, arguing that his grant of deferred action bars his removal

and thus makes his ongoing detention unlawful.  *See id*. at ¶¶ 24-25.

The day after filing his petition, Nevarez Jurado notified the Court that his

removal would occur that same day and asked for a temporary restraining order ("TRO")

preventing his removal until the Court could analyze the merits of his petition.  Docket Item 2.  "To maintain the status quo, and solely so that the Court c[ould] make an informed decision about its authority to issue relief and whether any relief that it has the power to issue should be granted," the Court granted Nevarez Jurado's motion for a TRO and temporarily enjoined the government from deporting him.  Docket Item 3. That order has since remained in effect.

The government[1] then moved to dismiss Nevarez Jurado's petition, Docket Item 10; Nevarez Jurado responded, Docket Item 12; the government replied, Docket item 15; and this Court heard oral argument, Docket Item 16.  For the reasons that follow, the government's motion to dismiss is DENIED and Nevarez Jurado's petition is GRANTED.

## BACKGROUND

Nevarez Jurado is a citizen of Mexico.  Docket Item 1 at ¶ 1.  On January 25, 2000, he "applied for admission into the United States from Mexico at the Ysleta Port of Entry in El Paso, Texas."  Docket Item 10-2 at 4.[2]  That same day, he was removed from the United States after a Notice and Order of Expedited Removal was entered

---

[1] For ease of reference, this Court will refer to the respondents—Stephen Kurzdorfer, in his official capacity as Acting Field Office Director, Buffalo Field Office, ICE; Joseph Freden, in his official capacity as Field Office Director, Bufalo Field Office, ICE; Todd Lyons, in his official capacity as Acting Director of ICE; and Kristi Noem, in her official capacity as U.S. Secretary of Homeland Security—as "the government" throughout this decision and order.

[2] Page numbers in docket citations refer to ECF pagination.

against him.  *See id.* at 1-3.  Under that order, Nevarez Jurado was "prohibited from entering, attempting to enter, or being in the United States" for five years.  *Id.* at 3.

About four years later, "on or about January 18, 2004," Nevarez Jurado reentered the United States illegally.  Docket Item 10-3 at 1.  That same day, the prior order of removal was reinstated, Docket Item 10-1 at ¶ 4; *see also* Docket Item 10-3 at 1 (Notice of Intent/Decision to Reinstate Prior Order, dated January 18, 2004), and Nevarez Jurado was "prohibited from entering, attempting to enter, or being in the United States . . . [f]or a period of 20 years," Docket Item 10-3 at 2.  Nevarez Jurado was removed again on March 23, 2004.  Docket Item 10-4 at 1.

Although his petition and other filings do not indicate exactly when, Nevarez Jurado presumably reentered the United States after that removal.  In 2017 he applied for a U Visa, a type of visa available to victims of certain crimes who cooperate with law enforcement in the investigation and prosecution of those crimes.  *See* Docket Item 1-2 (indicating that Nevarez Jurado had applied for a U Visa on December 11, 2017).  On October 27, 2022, despite his pending order of removal and prior illegal entries, Nevarez Jurado was given a bona fide determination by USCIS, which also gave him an employment authorization document ("EAD") and placed him in deferred action for four years.  *See id.*  As USCIS told him when making that determination, "[d]eferred action is an act of administrative convenience to the government which gives some cases lower priority for removal."  *Id.*  As USCIS also indicated, Nevarez Jurado's eligibility for a U Visa and admissibility to the United States would be determined at a later date.  *See id.*

Less than three years later, after delivering freight to Fort Drum, New York, Nevarez Jurado was detained by ICE.  Docket Item 1 at ¶ 1.  His prior order of removal

was reinstated, Docket Item 10-1 at ¶ 5; *see also* Docket Item 10-4 (Notice of Intent/Decision to Reinstate Prior Order, dated September 22, 2025), and the government says that once this Court's order temporarily enjoining Nevarez Jurado's removal is lifted, he can be removed to Mexico within a week.  Docket Item 10-1 at ¶ 6.

To date, nothing in the record indicates that USCIS has revoked Nevarez Jurado's grant of deferred action, which is set to last through late October 2026.

## LEGAL PRINCIPLES

### I.    SECTION 2241 PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "When a petitioner brings a habeas petition [under section] 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'"  *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).  "The equitable principles governing [section] 2241 are reflected in the plenary discretion vested in habeas courts to 'hear and determine the facts, and dispose of the matter as law and justice require.'"  *Id.* (some alterations omitted) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990)).

## II.   MOTION TO DISMISS

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## <u>DISCUSSION</u>

## I.   STATUTORY AND REGULATORY CONTEXT

Nevarez Jurado's petition implicates a complex web of statutes and regulations, so the Court begins by providing an overview of the relevant provisions.

### A.   U Visa Program

"Congress created the U [V]isa program through the Victims of Trafficking and Violence Protection Act of 2000."  *Bruno v. Dir. of U.S. Citizenship & Immigr. Servs.*, 791 F. Supp. 3d 1249, 1254 (D. Colo. 2025) (citing Pub. L. 106-386, 114 Stat. 1464).  "A U [V]isa provides temporary legal status to victims of qualifying criminal activity who have suffered substantial physical or mental abuse and who cooperate with law enforcement in investigating or prosecuting those crimes."  *Velasco Gomez v. Scott*, 2025 WL 1726465, at *1 (W.D. Wash. June 20, 2025).  Under the statute, an individual

receives lawful nonimmigrant status and employment authorization "for a period of not more than [four] years" once USCIS approves the petition.  8 U.S.C. § 1184(p)(6).  Three years after an individual receives a U Visa, he or she may apply for lawful permanent resident status.  *See id.* § 1255(m)(1).

The number of U Visas that may be granted in a year is capped by statute at 10,000.  *Id.* § 1184(p)(2)(A).  "Anticipating [that] the statutory cap would be met soon after enactment, USCIS promulgated regulations establishing a waiting list process."  *Bruno*, 791 F. Supp.3d at 1255 (citation omitted).  Under those regulations, "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list."  8 C.F.R. § 214.14(d)(2).  "Priority on the waiting list will be determined by the date the petition was filed[,] with the oldest petitions receiving the highest priority."  *Id.*

"Although the wait list process was designed to promptly provide U [V]isa applicants with work authorization and protection from removal, it often takes years for USCIS to place petitioners on the waitlist."  *Rodriguez Hernandez v. Scott*, 775 F. Supp. 3d 821, 823 n.2 (D. Vt. 2025).  "On June 14, 2021, in response to 'drastic increases in the volume of U nonimmigrant[] petitions and a growing backlog awaiting placement on the waiting list or final adjudication,' USCIS announced and implemented the Bona Fide Determination . . . process."  *Kothari v. Dir. of U.S. Citizenship & Immig. Servs.*, 2025 WL 732075, at *3 (N.D. Ill. Jan. 24, 2025) (quoting U.S. Citizenship & Immigr. Servs., *Policy Alert* (June 14, 2021), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf).

Under the Bona Fide Determination ("BFD") process, "when USCIS receives a new U [V]isa petition from an individual living in the United States, USCIS first considers whether the petition is 'bona fide,' meaning that the application has been 'made in good faith; without fraud or deceit.'" *Id.* (quoting U.S. Citizenship & Immigr. Servs., Policy Manual Vol. 3, Part C, Ch. 5.). "If USCIS concludes the applicant meets that test, USCIS then 'determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion.'" *Id.* (quoting U.S. Citizenship & Immigr. Servs., Policy Manual Vol. 3, Part C, Ch. 5.). "When the applicant overcomes the second hurdle, that applicant is issued an employment authorization document and is granted deferred action." *B.D.A.A. v. Bostock*, 2025 WL 3484912, at *5 (D. Or. Dec. 4, 2025).

Although a separate system, "[t]he BFD process has not created a separate queue for U [V]isas." *Patel v. Noem*, 2025 WL 2673191, at *1 (N.D. Ill. Sept. 17, 2025). "[T]here is one line, but the petitioners in that line may carry either the waiting list designation or the BFD designation." *Kothari*, 2025 WL 732075, at *3. So in sum, a BFD and placement on the U Visa waiting list both provide a petitioner with employment authorization and deferred action while that petitioner waits for a U Visa to become available.[3]

---

[3] Although not relevant to this action, there is a "critical difference between a BFD" and placement on the waiting list—that is, petitioners on the waiting list may receive advance parole and accordingly may "leave the country and . . . reenter lawfully without jeopardizing" their U Visa application. *See Bruno*, 791 F. Supp. 3d at 1255 (quoting *Navarro-Aispura v. INS*, 53 F.3d 233, 235 (9th Cir. 1995)).

**B.    Deferred Action**

"Deferred action, as provided for in the regulations, is 'an act of administrative convenience to the government that gives some cases lower priority' for removal." *Kondapalli v. Dir. of U.S. Citizenship & Immigr. Servs.*, 2025 WL 3096891, at *2 (D. Vt. Oct. 3, 2025) (quoting 8 C.F.R. § 274a.12(c)(14)).   "Approval of deferred action status means that, for . . . humanitarian reasons[,] . . . no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated."  *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 484 (1999) (Scalia, J.) (quoting 6 C. Gordon, S. Mailman, & S. Yale-Loehr, *Immigration Law & Procedure* § 72.03[2][h] (1998)).  Although "it is not a creature of statute," *A.C.R. v. Noem*, — F. Supp. 3d —, 2025 WL 3228840, at *14 n.19 (E.D.N.Y. Nov. 19, 2025), courts across the country have concluded that deferred action provides, at the very least, some degree of protection from removal, *see, e.g.*, *Rodriguez Hernandez*, 775 F. Supp. 3d at 823 ("[F]oreign nationals with deferred action do not have immigrant or nonimmigrant status, but they do have protection from removal for the period authorized by USCIS."); *De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 755 F. Supp. 3d 1266, 1268 (N.D. Cal. 2024) (noting that "deferred action . . . protects [U Visa petitioners] against removal from the United States"); *cf. Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863-64 (6th Cir. 2022) (noncitizen's removal order "was not executable" due to her grant of deferred action).

**C.    Reinstatement of Removal Orders**

"'Congress has created an expedited process for aliens who reenter the United States without authorization after having already been removed,' set forth at 8 U.S.C. §

8

1231(a)(5)." *Ramirez Lopez v. Trump*, 2025 WL 3274224, at *2 (S.D.N.Y. July 10, 2025) (quoting *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021)). Under that statute:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). "Reinstatement is a summary proceeding conducted by an ICE official, which involves a determination of whether the alien was subject to a prior order of removal; [whether] the alien was removed or departed voluntarily while under an order of removal[;] and whether the alien unlawfully reentered the United States." *Ramirez Lopez*, 2025 WL 3274224, at *2. "Other than seeking withholding of removal to a particular country, aliens subject to an order of reinstatement cannot seek any other relief." *Id.* at *3 (citing *Delgado v. Mukasey*, 516 F.3d 65, 71 (2d Cir. 2008)).

## II.    JURISDICTION

The Court begins, as it must, by examining its jurisdiction. The government argues that Nevarez Jurado's petition "should be dismissed because this Court lacks jurisdiction over this matter." Docket Item 10-5 at 2. More specifically, the government says that because Nevarez Jurado's detention arises from the decision to commence removal proceedings against him, "judicial review of [his] claims is barred by [8 U.S.C.] § 1252(g)." *See* Docket Item 10-5 at 3.

Section 1252(g) provides, in pertinent part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute

9

removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  Although this

jurisdictional provision certainly is relevant to many other issues in immigration law, the

Supreme Court has explained that it is in fact an outgrowth of the practice of providing

certain noncitizens with deferred action.  *See AADC*, 525 U.S. at 483-84.  "Since no

generous act goes unpunished," grants of deferred action inevitably "opened the door to

litigation in instances where [the government] chose *not* to exercise it."  *Id.* at 484.  As

Justice Scalia concluded, section 1252(g) was "clearly designed to give some measure

of protection to 'no deferred action' decisions and similar discretionary determinations"

so that they would "not be made the bases for separate rounds of judicial intervention."

*Id.* at 485.

Consistent with this context, "[s]ection 1252(g) is directed 'against a particular

evil: attempts to impose judicial constraints upon prosecutorial discretion.'"  *Ozturk v.*

*Hyde*, 136 F.4th 382, 396 (2d Cir. 2025) (quoting *AADC*, 525 U.S. at 485 n.9); *see also*

*AADC*, 525 U.S. at 482 (section 1252(g) is not a "'zipper' clause that says 'no judicial

review in deportation cases unless this section provides judicial review'").  Its "bar on

jurisdiction is 'narrow'" and "cabined 'to three discrete actions': a decision 'to *commence*

proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Ozturk*, 136 F.4th at 396-

97 (quoting *AADC*, 525 U.S. at 482); *see also AADC*, 525 U.S. at 482 ("It is implausible

that the mention of three discrete events along the road to deportation was a shorthand

way of referring to all claims arising from deportation proceedings.").

In moving to dismiss Nevarez Jurado's petition, the government argues that

section 1252(g) strips this Court of jurisdiction because Nevarez Jurado's detention

"arises from" the decision to commence removal proceedings against him.  *See* Docket

Item 10-5 at 2 (alteration omitted) (quoting *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016)).  But that argument does not accord with section 1252(g)'s narrow scope: although section 1252(g) certainly "prohibits judicial review of challenges to the discretionary decision whether to execute a removal order," *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018), "[t]here are 'many other decisions or actions that may be part of the deportation process' but that do not fall within the three discrete exercises of 'prosecutorial discretion' covered by [section] 1252(g)," *Ozturk*, 136 F.4th at 397 (quoting *AADC*, 525 U.S. at 482, 489); *see also Siguencia-Romero v. Joyce*, 2025 WL 3090887, at *4 (S.D.N.Y. Nov. 5, 2025) ("Section 1252(g) does not 'cover all claims arising from deportation proceedings or impose a general jurisdictional limitation.'" (alterations omitted) (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020)); *Torres-Jurado v. Biden*, 2023 WL 7130898, at *2 (S.D.N.Y. Oct. 29, 2023) ("The Supreme Court has cautioned against reading [section 1252(g)] with 'uncritical literalism.'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018))).

What all that means is that this Court cannot second-guess the wisdom of the executive branch's exercise of its discretion, but it can entertain a challenge to the process the executive branch follows during the removal process.  *See, e.g.*, *You*, 321 F. Supp.3d at 455-58 (district court had jurisdiction to decide whether ICE's decision to remove a noncitizen before his motion to reopen was adjudicated would violate the Immigration and Nationality Act); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 956 (S.D.N.Y. 2018) (petitioner's "seek[ing] consideration of his legitimate and authorized pursuit of an existing process *before* the government exercises its right to remove . . . is not a claim of a right to remain in the United States").

11

Moreover, once the executive branch has already exercised its discretion and granted an individual an affirmative immigration benefit, the Court also can address detention resulting from "the government's failure to honor benefits it has already granted."  *See Sepulveda Ayala*, 794 F. Supp. 3d 901, 909 (W.D. Wash. 2025).  In fact, that is precisely what a growing number of district courts around the country have recently concluded in analogous cases.  *See, e.g.*, *Aguilar Gama v. Bondi*, 2025 WL 3559942, at *3 (W.D. Wash. Dec. 12, 2025) ("But for the grant of deferred action, [p]etitioner would have no basis to challenge his detention.  It is thus clear that [p]etitioner's claims arise from USCIS's grant of deferred action, combined with ICE's refusal to honor that grant, rather than the execution of a removal order."); *Espinoza Cruz v. English*, 2025 WL 3469811, at *2 (N.D. Ind. Dec. 3, 2025) ("[Petitioner] is not directly challenging the execution of his removal order, though his petition was triggered by the decision to detain him in order to remove him.  Instead, [petitioner] is challenging the government's disregard of his deferred action status."); *Patel v. Hyde*, 2025 WL 3169875, at *1 (D. Mass. Nov. 12, 2025) ("At bottom, [petitioner] does not challenge the government's discretionary decision to execute a removal order; he challenges the government's refusal to honor USCIS's prior (unrevoked) grant of deferred action."); *Espinoza-Sorto v. Agudelo*, 2025 WL 3012786, at *5 (S.D. Fla. Oct. 28, 2025) (because "a grant of 'deferred action' is an 'affirmative immigration benefit' that effectively makes it unlawful for a removal order to be executed while the alien has deferred action status," section 1252(g) did not bar district court's review of whether government could "legally detain and remove" a noncitizen who had been granted deferred action); *Santiago v. Noem*, 2025 WL 2792588, at *3-4 (W.D. Tex. Oct. 2, 2025) ("Courts have

. . . found that [section] 1252(g) does not prevent them from considering detention-related challenges brought by deferred action recipients." (collecting cases)); *Sepulveda Ayala*, 794 F. Supp. 3d at 909 ("Because [petitioner]'s claims arise from the [g]overnment's grant of deferred action rather than from execution of his removal order, [s]ection 1252(g) does not strip this Court of jurisdiction."); *cf. Enriquez-Perdomo*, 54 F.4th at 863-64 (section 1252(g) did not bar plaintiff's *Bivens* claim because deferred action had given her "'affirmative relief' from removal," rendering her removal order "not executable" and thus outside the scope of section 1252(g) (alteration omitted) (quoting *Regents*, 591 U.S. at 18));[4] *but see Velasco Gomez*, 2025 WL 1726465, at *5 (concluding that petitioner's claims implicated section 1252(g)'s jurisdictional bar because they "ar[o]se directly from the agency's allegedly unconstitutional decision and action to detain him and execute his valid removal order despite his deferred action status").[5]

---

[4] This Court acknowledges that the analysis in *Enriquez-Perdomo* was "limited to the circumstances of th[at] case" and that the Sixth Circuit did "not draw any conclusions about other circumstances in which removal orders may not be 'executable.'" *See* 54 F.4th at 864 n.5. The Court nevertheless finds its logic to be persuasive and consistent with Chief Justice Roberts's description of deferred action in *Regents*.

[5] In addition to citing *Velasco Gomez*, the government urges the Court to follow *K.K. v. Garland*, 2025 WL 274431 (W.D.N.Y. Jan. 23, 2025), and hold that section 1252(g) precludes jurisdiction. *See* Docket Item 15 at 1-3. But *K.K.* is inapposite. In that case, the petitioner claimed that the execution of his removal order while his U Visa application was pending violated "various constitutional, statutory, and regulatory provisions." *K.K.*, 2025 WL 274431, at *2. But nothing in *K.K.* indicates that that petitioner had been granted deferred action, which, as discussed above, is critical to the jurisdictional analysis here. The same is true of another recent case from within this Circuit holding that section 1252(g)'s jurisdictional bar applied, *Siguencia-Romero*, where the petitioners argued, among other things, that their detention impeded their ability to *file* U visa applications. 2025 WL 3090887, at *3-6.

This Court can address whether the government has honored its prior grant of deferred action status because, in this context and as USCIS told Nevarez Jurado when it gave him deferred action, granting deferred action is itself an exercise of government discretion which, once granted, amounts to an affirmative "immigration benefit that prevents removal."  *See Ayala v. Bondi*, 2025 WL 2209708, at *3 (W.D. Wash. Aug. 4, 2025) (bold omitted); *see also Espinoza-Sorto*, 2025 WL 3012786, at *5.

The Supreme Court's decision in the context of the Deferred Action for Childhood Arrivals ("DACA"), a United States Department of Homeland Security program that provided deferred action and other benefits to individuals brought to the United States as children,[6] is instructive.  *See Dep't of Homeland Sec. v. Reg. of the University of Cal.*, 591 U.S. 1 (2020).  There, Chief Justice Roberts observed that "[t]he defining feature of deferred action is the decision to defer removal (and to notify the affected alien of that decision)."  *Id.* at 27.  DACA was thus "not simply a non-enforcement policy"; rather, it created proceedings that resulted in "'affirmative act[s] of approval,' the very opposite of a 'refus[al] to act.'"  *Id.* at 18 (quoting *Heckler v. Chaney*, 470 U.S. at 831-32 (1985)).[7]

---

[6] As another district court facing this issue recently concluded, "[t]here is no reason to treat the deferred action granted in connection with a bona fide determination for a U [V]isa application any differently than the deferred action granted in connection with other provisions" such as DACA.  *Espinoza Cruz*, 2025 WL 34698111, at *3.

[7] *Regents* did not involve, as this case does, a habeas petition challenging the detention of a deferred action holder but rather a challenge to DACA's rescission.  *See* 591 U.S. at 8-9.  Nevertheless, just as this Court found the reasoning in *Enriquez-Perdomo* persuasive, the Court finds Chief Justice Roberts's analysis to be helpful in evaluating the significance of a grant of deferred action.

Like those given deferred action under DACA, Nevarez Jurado received an "affirmative immigration benefit." More specifically, he was given a four-year period of deferred action and an EAD as the result of a USCIS process that determined, among other things, that his petition for a U Visa was made in good faith, that he was not a risk to national security or public safety, and that he warranted a favorable exercise of discretion. *See B.D.A.A.*, 2025 WL 3484912, at *5 (describing U Visa BFD process). If, as the government argues, Nevarez Jurado's grant of deferred action was "merely a form of prosecutorial discretion that advise[d him that his] case [wa]s a low priority, not a non-priority, and not protect[ed] from removal," *see* Docket Item 15 at 3, the Court fails to see why USCIS would go through the trouble of making that determination and then notifying Nevarez Jurado of its decision. And on the flip side, if the government had not notified Nevarez Jurado of its determination, he may well have left the United States to avoid any possible detention by ICE.

Stated another way, if government prosecutors simply decided not to take immediate action to deport Nevarez Jurado while reserving their ability to change their minds whenever they wanted, why make explicit findings that he was not a risk and that he deserved favorable consideration? Why tell him? Why not simply defer now and take action to deport him whenever they chose to do so? Why tell Nevarez Jurado that his removal will be deferred for four years and thus encourage him to stay in this country? And why not at least tell him that staying here would carry a risk that they might change their minds willy nilly and arrest him—a risk about which he would undoubtedly be unaware?

15

In other words, the type of discretionary decision protected by section 1252(g) occurred when USCIS told Nevarez Jurado that he would receive deferred action for four years—an affirmative immigration benefit. *Cf. Regents*, 591 U.S. at 18 (characterizing DACA as "a program for conferring affirmative immigration relief" instead of "a passive non-enforcement policy"). Viewed in that light, Nevarez Jurado is not challenging the decision to commence removal proceedings; rather, he is challenging the government's refusal to honor the benefit that it gave him in October 2022. Because that challenge does not "arise from" the decision to commence removal proceedings, section 1252(g) does not bar this Court's jurisdiction over that claim. *See Sepulveda Ayala*, 794 F. Supp. 3d at 908 ("[T]he proper jurisdictional analysis under [s]ection 1252(g) focuses on the government action or decision that gives rise to the plaintiff's claims, not whether the plaintiff's claims might affect or preclude removal." (citing *Arce v. United States*, 899 F.3d 796, 799-800 (9th Cir. 2018))).

What is more, by arresting and confining Nevarez Jurado without revoking his grant of deferred action or even considering the effect of his deferred action on his potential removability, the government's actions implicate fundamental due process concerns.[8] *See Maldonado v. Noem*, 2025 WL 1593133, at *2 (S.D. Tex. June 5, 2025)

---

[8] Additionally, by detaining and attempting to remove Nevarez Jurado without revoking his grant of deferred action, the government is essentially taking away a benefit it provided him—that is, some degree of protection from removal—without any process whatsoever. That also implicates due process concerns that are outside the scope of section 1252(g)'s bar. *See Sepulveda Ayala*, 794 F. Supp. 3d at 914 ("[O]nce [an individual is] in possession of a particular benefit, it may not be taken away without procedural due process." (citing *Bell v. Burson*, 402 U.S. 535, 539 (1971)); *cf. Santiago*, 2025 WL 2792588, at *10 ("Although DACA is a discretionary benefit, not an entitlement, once DACA is conferred, a recipient has a protected property interest in retaining that benefit.").

(detention and "possible imminent deportation" of individual with grant of deferred action without a hearing "appear[ed] to be a procedural due process violation").  Section 1252(g) certainly does not bar the Court from addressing those concerns.

For all those reasons, section 1252(g) does not preclude this Court's jurisdiction.

## III.   THE MERITS OF NEVAREZ JURADO'S PETITION

The Court now turns to the merits of Nevarez Jurado's petition.  As the Court noted earlier, a district court may grant a writ of habeas corpus when an individual demonstrates that his or her detention violates the laws or Constitution of the United States.  28 U.S.C. § 2241(c)(3).  Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law."  *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 553 U.S. 289, 302 (2001)).

The Court finds that Nevarez Jurado has done so in two respects.  First, this Court concludes, as an ever-growing number of district courts across the country have concluded, that an unrevoked grant of deferred action prevents removal.  *See Sepulveda Ayala*, 794 F. Supp.3d at 912-14;  *B.D.A.A.*, 2025 WL 3484912, at *6; *Aguilar Gama*, 2025 WL 3559942, at *2-3; *Espinoza Cruz*, 2025 WL 3469811, at *3; *Patel*, 2025 WL 3169875, at *2; *Espinoza-Sorto*, 2025 WL 3012786, at *5; *Maldonado*, 2025 WL 1593133, at *2.[9]  Thus, because that protection means Nevarez Jurado's

---

[9] The holdings in *Espinoza Cruz* and *Maldonado* were in the context of motions for a preliminary injunction, and their conclusions on this issue were thus that the petitioners were likely to succeed on the merits of their claims.  *See Espinoza Cruz*, 2025 WL 3469811, at *3 (finding that petitioner had "a likelihood of success on the merits of his claim that it [wa]s unlawful to remove him while he ha[d] deferred action status that postdate[d] his removal order"); *Maldonado*, 2025 WL 1593133, at *2 (concluding that it was "likely that [p]etitioner's detention and possible imminent

removal is not reasonably foreseeable, his continued detention under 28 U.S.C. § 1231 is improper.

Second, because Nevarez Jurado did not receive an individualized hearing at which he could raise the issue of his grant of deferred action, the Court also concludes that his detention has violated his rights under the Fifth Amendment's Due Process Clause.

### A.    Deferred Action

The first conclusion—that Nevarez Jurado's unrevoked grant of deferred action prevents his removal—is consistent with the Supreme Court's description of deferred action in *AADC*. *See* 525 U.S. at 484. In that case, Justice Scalia, looking to INS practice, defined deferred action as meaning that *"*no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." *Id.* (citation and internal quotation marks omitted). Under this reading, a grant of deferred action is an affirmative benefit providing that, while it is in effect, "*no action will thereafter be taken*" to proceed against the recipient of that grant. *Cf. Regents*, 591 U.S. at 9 (Roberts, C.J.) (noting that DACA recipients received "two-year forbearance of removal").

As Judge Whitehead of the United States District Court for the Western District of Washington noted in a thorough and well-reasoned opinion addressing this issue, USCIS's own policy manual supports the Supreme Court's reading in *AADC*. *See Sepulveda Ayala*, 794 F. Supp. 3d at 912-13. There, USCIS states that "[a]liens

_____

deportation violate[d due process] protections" because "his BFD and deferred action status arguably rendered him presumptively ineligible for removal").

granted deferred action are considered to be in a period of stay authorized under USCIS policy for the period deferred action is in effect."  USCIS Policy Manual, Vol. 1, Part H, Ch. 2(A)(4), https://www.uscis.gov/policy-manual/volume-1-part-h-chapter-2 (last visited Dec. 10, 2025).  In other words, USCIS says that the removal of those granted deferred action is "stay[ed]" until "the period [of] deferred action" is no longer "in effect."  *Id.*

The government cites, *see* Docket Item 10-5 at 6, the language in Nevarez Jurado's BFD notice stating that "deferred action is an act of administrative convenience to the government which gives some cases lower priority for removal,"[10] *see* Docket Item 1-2.   But "this description need not conflict with established law: giving cases 'lower priority' naturally flows from the [g]overnment's decision not to proceed with removal, the core meaning of deferred action," *Sepulveda Ayala*, 794 F. Supp. 3d at 913.  So as noted above, the government exercised its discretion to defer Nevarez Jurado's removal for four years, and administrative convenience or not, it must live with the effect of that decision while his deferred action remains unrevoked.

At bottom, it is difficult to square the government's conception of deferred action here—as an exercise of pure discretion that can shift on a dime—with the Supreme Court's past pronouncements on the topic.  For example, in his partial concurrence in

---

[10] The government also argues that "deferred action 'may be terminated at the discretion of USCIS.'"  Docket Item 10-5 at 6 (quoting 8 C.F.R. § 214.14(d)(3)).  The problem with this argument, however, is that USCIS apparently has done nothing to terminate Nevarez Jurado's deferred action.  And the very fact that regulations provide for its termination further supports the conclusion that a grant of deferred action means more than an exercise of prosecutorial discretion without any consequences: "[o]ne cannot revoke what was never meaningful to begin with."  *See Ayala*, 2025 WL 2209708, at *4.

*Regents*, Justice Thomas described the effect of DACA's provision of deferred action as creating "a new category of aliens . . . *exempt from statutory removal procedures*," 591 U.S. at 54 (emphasis added), while Chief Justice Roberts, writing for the Court, characterized the program as providing a "two-year *forbearance of removal*," *id.* at 9 (emphasis added). This understanding of deferred action in the context of Nevarez Jurado's case makes sense—the government has exercised its discretion and set a time frame in which its decision applies. And agreeing with the government's argument in this case would result in a system where grants of deferred action would have no effect—not the system envisioned by Justice Scalia where "no action will . . . be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." *See AADC*, 525 U.S. at 484 (citation and internal quotation marks omitted).

Therefore, Nevarez Jurado clearly has demonstrated that USCIS granted him deferred action that will remain valid until October 2026, and because that deferred action grant has not been revoked, he is protected from removal. The significance of this conclusion is magnified because the government says that Nevarez Jurado's reinstated order of removal is administratively final and that he therefore is being held under 8 U.S.C. § 1231. *See* Docket Item 10-5 at 3-4. That provision provides that when a noncitizen "is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," 8 U.S.C. § 1231(a)(1)(A), following the latest of three potential events—here the "date the order of removal becomes administratively final," *see id.* § 1231(a)(1)(B)(i).

Although the detention of a removable noncitizen is authorized to continue beyond that 90-day period, that detention is limited to "a period reasonably necessary to bring about" the noncitizen's removal from the United States. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Because Nevarez Jurado's unrevoked grant of deferred action does not expire until October 2026, he "has shown that there is no significant likelihood of his removal in the reasonably foreseeable future." *See Primero v Mattivelo*, 2025 WL 1899115, at *5 (D. Mass. July 9, 2025) (detention of noncitizen with deferred action valid until 2026 was improper because "there is no significant likelihood of his removal in the reasonably foreseeable future"); *see also Asghar v. Swearingen*, Case No. 2:25-cv-306, Docket Item 18 at 8-11 (S.D. Ind. Aug. 22, 2025) (concluding that "there [wa]s no basis for the Court to find that removal is imminent" when petitioner had been granted deferred action in 2025 despite a removal order that had become administratively final in 2021).[11]

For all those reasons, Nevarez Jurado's detention is improper.

## B.    Due Process

And even if all that were not the case, Nevarez Jurado has demonstrated on the record before the Court that his ongoing detention violates his right to due process.

---

[11] Perhaps it can be argued that this analysis should be different because reinstatement of Nevarez Jurado's removal order on September 22, 2025, serves as the starting point for the 90-day statutory removal period (which Nevarez Jurado would still appear to be within). But the government conceded at oral argument that, for purposes of calculating the starting point of the removal period, the date his removal order became administratively final is the date of his original removal order—more than twenty years ago. Nevertheless, the Court need not weigh in on this question. Unless it is formally revoked, Nevarez Jurado's grant of deferred action does not expire until October 2026, and this Court cannot conceive of how his removal is reasonably foreseeable before that date.

The Fifth Amendment's Due Process Clause forbids the government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause covers noncitizens, whether their presence is lawful, unlawful, temporary, or permanent."  *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).  Indeed, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The question of whether Nevarez Jurado's detention violates his due process rights "turns on whether [the government] ha[s] free [rein] to detain a deferred action recipient without a pre-detention hearing or individualized determination."[12]  *F.R.P. v. Wamsley*, 2025 WL 3037858, at *3 (D. Or. Oct. 30, 2025).  "Legal precedent strongly suggests that they do not."  *Id.* at *3-6 (collecting cases).  Following the recent examples provided by other courts confronted with this question—that is, whether an individual with an unrevoked grant of deferred action received sufficient procedure under the Fifth Amendment's Due Process Clause prior to their detention—this Court turns to the familiar balancing test applied in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

---

[12] As the Court noted earlier, reinstatement of a prior removal order "is a summary proceeding conducted by an ICE official, which involves a determination of whether the alien was subject to a prior order of removal; [whether] the alien was removed or departed voluntarily while under an order of removal[;] and whether the alien unlawfully reentered the United States."  *Ramirez Lopez*, 2025 WL 3274224, at *2. Nevarez Jurado's September 22, 2025, Notice of Intent/Decision to Reinstate Prior Removal Order that the government submitted, Docket Item 10-4, indicates only that an ICE official, under the process applicable to noncitizens with prior removal orders the Court has described, determined that Nevarez Jurado was "subject to removal through reinstatement of" his prior removal order, *id.* at 1.  That provides no basis for the Court to conclude that Nevarez Jurado was given a pre-detention hearing or an individualized determination that addressed the effect of his deferred action status.

*See, e.g.*, *F.R.P.*, 2025 WL 3037858, at \*3; *Santiago*, 2025 WL 2792588, at \*10;

*B.D.A.A.*, 2025 WL 3484912, at \*5-6; *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 528-

29 (2004) ("The ordinary mechanism that we use . . . for determining the procedures

that are necessary to ensure that a citizen is not deprived of life, liberty, or property,

without due process of law is the test that we articulated in *Mathews v. Eldridge*."

(citations and internal quotation marks omitted)).

That balancing test looks to three factors: (1) "the private interest that will be

affected by the official action"; (2) "the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or substitute

procedural safeguards"; and (3) "the [g]overnment's interest, including the function

involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of

procedural due process is that a person risking a serious loss be given notice and an

opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v.

Bostock*, 2025 WL 2430267, at \*8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at

348). Applying that balancing test, the Court concludes that Nevarez Jurado's detention

violates his due process rights.

First, it is beyond dispute that Nevarez Jurado has a protected interest in his

freedom. "Freedom from imprisonment—from government custody, detention, or other

forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause

protects." *Zadvydas*, 533 U.S. at 690. Indeed, "the interest in being free from

imprisonment" is "the most significant liberty interest there is." *Black v. Decker*, 103

F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez*, 978 F.3d at 851). Put simply,

Nevarez Jurado received a grant of deferred action that has not been revoked, and he has a constitutionally protected interest in being free from detention while that status is pending. The first *Mathews* factor thus weighs decisively in his favor. *See F.R.P.*, 2025 WL 3037858, at *4 (first *Mathews* factor favored deferred action recipient when there was "no evidence in the record that [he] [wa]s a flight risk or a danger to the community").

Second, the procedure used thus far has not only created a high risk that Nevarez Jurado will continue to be erroneously deprived of his liberty, it arguably already has done exactly that. As the Court noted earlier, reinstatement of a prior removal order under section 1231(a)(5) is "a summary proceeding," and noncitizens "subject to an order of reinstatement cannot seek any other relief." *See Ramirez Lopez*, 2025 WL 3274224, at *2-3. So based on the record before this Court, it appears that ICE has detained Nevarez Jurado without "a hearing on the effect his lawful grant of deferred action has on his potential removal," *see Maldonado*, 2025 WL 1593133, at *2; *see also Santiago*, 2025 WL 2792588, at *11-12 (second *Mathews* factor supported DACA recipient's claim "that she has been denied procedural due process" where there was "no individualized explanation of any kind for" her detention), and based on the law he is not entitled to anything else. Because that grant of deferred action affirmatively prevents his removal while it remains unrevoked, *see, e.g.*, *F.R.P.*, 2025 WL 3037858, at *4, and because it appears that Nevarez Jurado has not received any opportunity to raise that argument, the second *Mathews* factor also weighs decisively in favor of concluding that his ongoing detention violates his due process rights.

Finally, the government's interest in continuing to detain Nevarez Jurado is relatively slight.  In fact, another district court recently found exactly that in addressing a similar case, noting that when weighed against the "staggering" costs to the public of immigration detention, the government's interest in holding an individual with what appeared to be an unrevoked grant of deferred action was "low."  *F.R.P.*, 2025 WL 3037858, at *5 (internal quotation marks omitted) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017)).  The government's only stated purpose in detaining Nevarez Jurado is to remove him.  *See* Docket Item 10-5 at 5 ("[T]he government can establish that [p]etitioner's removal is significantly likely to occur within the reasonably foreseeable future, justifying [his] continued detention.").  But that interest "is weak or nonexistent where removal seems a remote possibility at best."  *See Santiago*, 2025 WL 2792588, at *12 (quoting *Zadvydas*, 533 U.S. at 690-91; *see also id.* ("Where an individual is protected from removal through deferred action, their detention serves no valid purpose.").

What is more, there is absolutely no evidence in the record that Nevarez Jurado is a flight risk or a danger to the community.  On the contrary, USCIS determined that he did not pose a risk to national security or public safety when it gave him a BFD.

In sum, in addition to establishing that his unrevoked deferred action status prevents his removal from the United States, Nevarez Jurado also has established that his ongoing detention has violated his rights under the Fifth Amendment's Due Process Clause.  For both of those reasons, the Court concludes that his detention is unlawful.

## IV.    REMEDY

"In the context of deferred action recipients, district courts have found both immediate release and a bond hearing to be appropriate remedies." *Santiago v. Noem*, 2025 WL 2792588, at *13 (W.D. Tex. Oct. 2, 2025).  In light of this case's history, this Court is persuaded that Nevarez Jurado's immediate release is appropriate.

As noted above, there is no evidence on the record that Nevarez Jurado is a danger to the community or a flight risk; in fact, USCIS already has concluded that he was not a risk to national security or public safety when it gave him a BFD.  *See B.D.A.A.*, 2025 WL 3484912, at *5 (describing U visa BFD process); *see also* USCIS Policy Manual, Vol. 3, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5   (last visited Dec. 10, 2025) (noting that USCIS conducts "background and security checks" to help "determine whether to issue BFD EADs and grant deferred action").  Moreover, because he may not be removed so long as his grant of deferred action remains unrevoked, Nevarez Jurado's ongoing detention serves no purpose for the government, which has justified his detention only on the basis of his removal "within the reasonably foreseeable future."  *See* Docket Item 10-5 at 5.  Accordingly, the Court joins the growing number of district courts around the country that, faced with these circumstances, have ordered the immediate release of similarly situated petitioners.  *See Aguilar Gama*, 2025 WL 3559942, at *4; *B.D.A.A.*, 2025 WL 3484912, at *8; *Patel*, 2025 WL 3169875, at *2; *F.R.P.*, 2025 WL 3037858, at *8; *Santiago*, 2025 WL 2792588, at *14; *Ayala*, 2025 WL 2209708, at *5.

## **CONCLUSION**

For the reasons stated above, Nevarez Jurado's petition, Docket Item 1, is GRANTED and the government's motion to dismiss his petition, Docket Item 10, is DENIED.  **Within 24 hours** of the issuance of this order, Nevarez Jurado must be released.  On or before December 22, 2025, the government shall file an affidavit attesting to his release.


SO ORDERED.

Dated:   December 19, 2025
         Buffalo, New York



  */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE